

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| CARL L. SMITH | CIVIL ACTION |
| VERSUS | NO: 00-0111 |
| N. BURL CAIN, WARDEN | SECTION: "B"(6) |

## ORDERS AND REASONS

Carl L. Smith ("Smith") filed this action under 28 U.S.C. § 2254 challenging his 1995 conviction for second degree murder. Upon review of the record and the law, this Court has determined that the record is sufficient and that no evidentiary hearing is needed. For the reasons set forth below, the petition is **DISMISSED WITH PREJUDICE**.

## PROCEDURAL HISTORY

The Court addresses here the pro se petition of Carl L. Smith for the writ of *habeas corpus* pursuant to 28 U.S.C. § 2254. Smith is a state prisoner in the Louisiana State Penitentiary at Angola,

1

DATE OF ENTRY
JUN 3 0 2000

Louisiana. He was convicted along with his co-defendant, Derrick Banks, of second degree murder under Louisiana Revised Statute 14:30:1 after a trial by jury in the Criminal District Court for the Parish of Orleans, State Of Louisiana on January 11, 1995. He was sentenced on February 13, 1995 to life imprisonment without benefit of parole, probation, or suspension of sentence. On May 13, 1996, he was granted a motion for an out-of-time appeal. His sentence and conviction were affirmed on appeal by the Louisiana Fourth Circuit Court of Appeal on April 1, 1998. See State v. Smith, 709 So. 2d 1110 (table) (La. App. 4th Cir. 1998). Smith applied to the Louisiana Supreme Court for a Supervisory Writ of Review/Certiorari on October 22, 1998. On February 26, 1999 the Louisiana Supreme Court subsequently denied Smith's writ of review application. See State v. Smith, 738 So. 2d 1064 (La. 1999). Smith did not file any state post-conviction relief applications.

Smith filed the present § 2254 petition on December 29, 1999.[1] Smith lists three grounds of relief:[2]

(1) he was denied due process of law when the trial court

---

[1] A habeas corpus petition is considered "filed" by a pro se petitioner when it is delivered to a prison custodian. See Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995). The Southern District of Georgia has inferred in a § 2255 case that a prisoner delivers his petition on the date he signed it. See United States v. O'kaine, 971 F.Supp. 1479, 1480 (S.D. Ga. 1997).

[2] In his petition, Smith actually lists five questions to be presented to the Court. Three of which are listed here. The two additional questions challenge unspecified procedural and constitutional issues relating to collateral review by the courts.

prevented him from presenting his defense of mistaken identity and to evidence of other possible perpetrators who had motives to kill the victim;

(2) he was denied due process of law when the state withheld exculpatory evidence in the form of statements contained within a police report;

(3) he was denied due process of law because the state failed to prove him guilty beyond a reasonable doubt. In response, the State argues that Smith's petition should be dismissed as untimely under 28 U.S.C. 2241(d)(1).

This Court concludes that Smith's petition for habeas corpus relief was untimely filed under the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA) and therefore dismisses with prejudice petitioner's request for relief.

### FACTUAL BACKGROUND

The Court adopts the following factual rendition from the Louisiana Fourth Circuit Court of Appeal decision as drafted by Judge Joan Bernard Armstrong. See State v. Smith, 709 So. 2d 1110 (table) (La. App. 4th Cir. 1998).

> At around 2:00 p.m. on March 26, 1993, Officer Michael Petty was standing in front of the Sixth District Police Station at Felicity and South Robertson Streets when he heard several gunshots. He testified that the shots appeared to come from one and a half to two blocks away, and that they sounded as though they had come from a hunting rifle. The officer got into a police car and drove to the 2500 block of Martin Luther King where he saw a crowd gathering. He went into the building, and he found the body of Dwayne Schaffer lying in the stairwell

on the third level. Officer Petty testified as he drove to the scene, he had the stairwell in sight and did not see anyone come down those stairs. He also testified that there was another stairwell at the other end which he could not see.

Schaffer had been shot several times, and five 30/30 bullets were recovered from his body. Four spent Winchester 30/30 casings, one live Winchester 30/30 cartridge, and three spent 223 casings were recovered from the scene. There were no fingerprints on any of them. Officer John Treadway testified that the three 223 casings were fired from the same weapon, which he believed to have been a semi-automatic; and he testified that the four 30/30 casings were fired from a different weapon but definitely not from the same 30 caliber weapon.

Terry Schaffer, the victim's sister, testified that shortly before the shooting, she had seen her brother standing on her mother's porch. She testified that she was at the grocery store across the street when she heard the shots. She looked up and saw Banks shoot the victim and that the defendant [Smith] was there as well. She saw them both run from the scene, and she testified that she saw Banks with a rifle. She said that Banks wore a red and blue Girbaud and that defendant wore a green and blue Girbaud shirt. After they ran, she went to the scene and found her brother. She also saw Officer Petty running up the stairs, but she did not speak to him because she was too upset. She gave the names of defendant and Banks to the homicide detective. She denied giving a statement to Petty and that when she ran back to the scene, a crowd had gathered and that she thought something had happened to her brother. She also denied telling Detective Marchese that she did not know who had shot her brother but that there were witnesses that wanted to come forth.

Ollie Hill testified that she was getting off of the bus when she saw three men between the second and third floors of the building and that she heard three gunshots. She ran to the neutral ground and saw that two of the men had guns. She saw them both shoot the third man; and, she identified the two shooters as defendant, whom she also knew as "Turtle," and Banks. She ran back across the street and stood behind a tree. She testified that Banks tripped over the body and shot it again. She said that Banks had a rifle and wore a red Girbaud shirt with a hood and that defendant wore a white and green striped Girbaud shirt with a hood and had a shotgun that had been cut in half. Ms. Hill saw Ms. Schaffer run up the

stairwell and heard her yell that it was her brother. She did not talk to the police at the scene, but went to the Schaffer's house to tell them what had happened. She picked defendant's and Banks' pictures from a photographic lineup. She denied discussing what she had seen with Terry Schaffer, but she admitted telling Delores and Lillie Mae Schaffer.

Detective Gary Marchese testified that he had received a description from J.C. Allen of one assailant and that Allen told him the shooter wore a white T-shirt. Marchese further testified that when he showed a photographic lineup to Allen, Allen told him he did not get a good look at the subject he saw running. The detective also talked to Ernest Morgan who stated that he only heard shots. Marchese testified that Ms. Schaffer told him that she heard gunshots and ran up the stairwell. He described her as distraught and impossible to talk to, but she was able to give him the names of Derrick Banks and Turtle. He did not show her a photographic lineup because he did not believe that she had seen the shooting. Officer Petty testified that he did not see Ms. Schaffer on the stairwell when he ran up there and that he did not see her until after a crowd had congregated.

Dennis Gabriel testified that he had been talking to Dwayne Schaffer on the third floor and that when Schaffer started down the stairs, he saw a man come from around the corner with a rifle. He stated that this man wore blue jeans, a white hood, a baseball cap, and dark glasses. Gabriel ran to the fourth floor and testified that he heard two different weapons. He said that he did not go to the police with this information because he had a criminal record.

## TIMELINESS

Smith filed his current § 2254 petition after April 24, 1996, the effective date of the AEDPA, and therefore Smith's claims are governed by its provisions. See Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059, 2060 (1997); Nobles v. Johnson, 127 F.3d 409, 414 (5th Cir. 1997), cert. denied, 523 U.S. 1139, 188 S.Ct. 1845 (1998). The AEDPA allows "a person in custody pursuant to the judgment of a State court" one year from the date on which the state judgment

5

became final to file a § 2254 petition. See 28 U.S.C. § 2244(d)(1)(a).

Smith's conviction became final on April 15, 1998. The Louisiana Fourth Circuit Court of Appeal rendered its opinion on April 1, 1998. See Smith, 709 So. 2d at 1110. Immediately following the Louisiana Fourth Circuit's judgment Smith had three options. One, he could have applied for a rehearing from the Louisiana Fourth Circuit. See La. Code Crim. Proc. art. 922 A.[3] Two, he could have sought a writ of review from the Louisiana Supreme Court. See La. Code Crim. Proc. art. 922 D; See also La. Sup. Ct. Rule X, § 5(a). Three, Smith could have applied for a rehearing from the Louisiana Fourth Circuit and upon the rehearing's denial then sought a writ of review from the Louisiana Supreme Court.

---

[3]Article 922 pertains to the finality of judgment on appeal and provides in full as follows:

A. Within fourteen days of rendition of the judgment of the supreme court or any appellate court . . . a party may apply for rehearing. . .

B. A judgment rendered by the supreme court or other appellate court becomes final when the delay for applying for a rehearing has expired and application therefore has been made.

C. If an application for a rehearing has been made timely, a judgment of the appellate court becomes final when the application is denied.

D. If an application for a writ of review is timely filed with the supreme court, the judgment of the appellate court from which the writ of review is sought becomes final when the supreme court denied the writ.

Article 922 A of the Louisiana Code of Criminal Procedure states that Smith had fourteen days after the Louisiana Fourth Circuit's judgment to apply for a rehearing. See La. C. Crim. Proc. art. 922 A. Article 922 B adds that when the fourteen days for applying for the rehearing had expired and Smith had failed to file an application, the judgment of the Louisiana Fourth Circuit became final. See La. C. Crim. Proc. art. 922 B. Hence, the judgment of the Louisiana Fourth Circuit became final on April 15, 1998.

However, according to Article 922 D had Smith filed a timely application for writ of review with the Louisiana Supreme Court, the judgment of the Louisiana Fourth Circuit would not have become final until the Louisiana Supreme Court denied his writ. See La. C. Crim. Proc. art. 922 D. Thus, if Smith's October 22, 1998 application for a writ of review to the Louisiana Supreme Court were timely filed, the one year statute of limitations would not have begun to run until February 26, 1999, the date the Louisiana Supreme Court denied his writ, and his December 29, 1999 federal habeas petition would be timely.

The Louisiana Supreme Court Rules for filing supervisory writs of review to the Louisiana Supreme Court provide that an application must be made within thirty days after mailing of the notice of the original judgment of the appellate court. Rule X, § 5(a). Accordingly, Smith had until May 1, 1998 to file his supervisory writ of review. Smith did not file his writ until October 22, 1998. Thus, because Smith failed to apply for a rehearing and because he

did not seek a timely writ of review, his conviction became final fourteen days after the judgment of the Louisiana Fourth Circuit. Therefore, Smith had one year from April 15, 1998 or until April 15, 1999 in which to file his federal petition for a writ of habeas corpus.

Moreover, pursuant to § 2244(d)(2) the one year statute of limitations of § 2244(d)(1) is tolled for the time "during which a properly filed application for state post conviction relief or other collateral review with respect to the pertinent judgment or claim is pending." See 28 U.S.C.(d)(2); Fields v. Johnson, 159 F.3d 914, 916 (5th Cir. 1998). A "properly filed" application means one that conforms with a state's applicable procedural filing requirements. See Villegas v. Johnson, 184 F.3d 467, 470 (5th Cir. 1999), rehearing and rehearing en banc denied, 196 F.3d 1259 (5th Cir. 1999). Such procedural requirements include rules governing the time and place of filing. See Villegas, 134 F.3d at 148-9. See also Lovasz v. Vaughn, 134 F.3d 146, 148 (3d Cir. 1998).

As already noted, the Louisiana Supreme Court Rules provide that an application seeking review of a judgment of the court of appeal shall be made within thirty days after the mailing of the notice of the original judgment of the court of appeals. Rule X, § 5(a). The Rule specifically provides that no extensions will be granted.[4] Smith clearly did not submit his application seeking a

---

[4]Supreme Court Rule X, § 5(a) provides in relevant part: "No extension of time will therefor be granted."

writ review of the Louisiana Fourth Circuit's judgment within this thirty day time frame. Rather, he waited some six months after the Louisiana Fourth Circuit rendered its judgment to file his application and therefore his application was not "properly filed". Thus, his December 29, 1999 petition for a writ of habeas corpus is untimely.

Regardless of the provisions of the Supreme Court Rules, the constitutional grant of supervisory authority to the Louisiana Supreme Court is plenary and exercisable at the complete discretion of the court. See State v. Wimberly, 414 So. 2d 666, 670 (La. 1982); La. Const. Art. 5, Sec. 5(A). This could allow the Louisiana Supreme Court to grant Smith's application for a writ of review despite his untimely application. However, the court in Wimberly added that:

> "We have generally restricted the use of supervisory jurisdiction to those cases "where there is a clear usurpation of power not confided by law, or a refusal to perform some duty plainly imposed by law, and which [the lower courts] have no discretion to refuse, and when there is an entire absence of other adequate remedy."

Id. (quoting State ex rel. City of New Orleans v. Judge of the Sixth District Court, 32 La. Ann 549 (1880)). Therefore, despite the Louisiana Supreme Court's unexplained one word judgment, it does not appear from the record in this case that the Louisiana Supreme Court exercised its discretionary supervisory jurisdiction with respect to Smith's untimely application. Although the Louisiana Supreme

9

Court took over four months to enter a ruling on Smith's application, the determinative, one word judgment denying Smith's application gives no indication whether the court deliberated and declined Smith's claims on the merits or denied the writ as untimely. Irrespective of this uncertainty, the mere absence of an express statement by the Louisiana Supreme Court cannot convert Smith's untimely application into a "properly filed" application. See Williams v. Cain, 66 F.Supp. 2d 816, 818 (E.D. La. 1999). Consequently Smith's conviction became final on April 15, 1998.

Furthermore, even if one were to toll the one year statute of limitations for the period during which Smith's application for writ of review was pending before the Louisiana Supreme Court, Smith's § 2254 petition is still untimely. Smith's application was pending before the Louisiana Supreme Court for 127 days (from October 22, 1998 until February 26, 1999). Smith thus had one year and 127 days or until August 20, 1999 to file the instant petition. Smith did not file until December 29, 1999 and therefore his petition is still untimely.

Smith has failed to demonstrate circumstances which would support equitable tolling of the one year filing limitation under § 2244(d)(1). "Equitable tolling applies principally where the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights." Coleman v. Johnson, 184 F.3d 298, 402 (5th Cir. 1999) cert. denied, 120 S.Ct. 1564, 68 USLW 3630 (U.S. Apr. 03, 2000),

citing <u>Rashidi v. American President Lines</u>, 96 F.3d 124, 128 (5th Cir. 1996). In his federal habeas motion, Smith fails to provide any reasons explaining the five month delay which made his federal habeas application untimely. Without Smith demonstrating any evidence of extraordinary circumstances beyond his control which made it impossible for him to file his application on time, this court has no reason to equitably toll his federal application for habeas relief under § 2244(d)(1). As the Fifth Circuit has stated, "equity is not intended for those who sleep on their rights." <u>Fisher v. Johnson</u>, 174 F.3d 710, 715 (5th Cir. 1999).

**IT IS ORDERED** that the petition of Carl L. Smith for issuance of the writ of *habeas corpus* under 28 U.S.C. § 2254, be, and the same is hereby **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, this 29th day of June, 2000.

IVAN L.R. LEMELLE
UNITED STATES DISTRICT JUDGE